## S96A0876. MAYE v. PUNDT et al.
(477 SE2d 119)

SEARS, Justice.

The appellant, John Linzie Maye, challenges the election of appellee, Edith Pundt, to the City Council of Wadley, Georgia. The critical issue is whether the election superintendent for the City of Wadley was required by law to place Maye's nickname of "Tubby" on the ballot. The trial court concluded that the election superintendent was not required to do so, and that even if she were, Maye had not carried his burden to prove that the failure to place his nickname on the ballot changed or placed in doubt the result of the election. We agree with both of these rulings and find no merit to two other issues raised by Maye. We thus affirm.

In September 1995, the appellant, John Maye, filed a notice-of-candidacy affidavit to qualify as a candidate for the City Council of Wadley, Georgia. Maye wrote his name as "John Linzie Maye" on the first page of the affidavit, and on the second page he completed a line which read, "I desire that my name appear on the ballot as follows:

'John L. (Tubby) Maye.' " During the course of the election, the Superintendent of Elections for the City of Wadley (appellee Sallie Adams) did not prepare a sample ballot and have it available for public inspection, as required by OCGA § 21-3-194 (b). Moreover, Adams omitted Maye's nickname from the ballot, printing his name as "John Linzie Maye." The election was held on November 7, 1995, with four candidates running for election. Maye lost the election to Pundt by a margin of 12 votes.

On November 14, 1995, Maye filed this action under OCGA § 21-3-422, contesting the results of the election on the grounds that Pundt did not meet the applicable residency requirement and was thus ineligible to hold office,[1] and that the superintendent failed to properly list Maye's name on the official ballot and failed to have a sample ballot available for inspection before the election. Maye contended that the failure to place his nickname on the ballot and the failure to prepare a sample ballot were acts of misconduct sufficient to change or place in doubt the results of the election.[2]

The trial court denied Maye's challenge. It ruled that a pre-election ruling of Adams that Pundt met the residency requirement and was thus eligible to hold office barred Maye from litigating that issue in this action. The court also ruled that Maye's correct legal name was on the ballot and that there is no statutory requirement that a superintendent include nicknames on a ballot; that even assuming Maye's nickname should have been on the ballot, an insufficient number of electors testified that they were misled or confused by the absence of the nickname to place in doubt the result of the election; and that as for the failure to have a sample ballot available for inspection, Maye had made no showing that that failure had any effect on the outcome of the election.

1. Maye contends that the trial court erred in ruling that Adams's failure to place his nickname on the ballot was not an act of misconduct sufficient to place the results of the election in doubt.[3] For the reasons that follow, we conclude that it was not an act of misconduct.

First, although other states specifically permit a candidate to

---

[1] OCGA § 21-3-422 (2) was amended in 1995 to permit losing candidates to challenge the election of the winning candidate on the ground that "the defendant is ineligible for the nomination or office in dispute."

[2] Under OCGA § 21-3-422 (1), a losing candidate may contest the result of an election on the ground of "[m]isconduct, fraud, or irregularity by any primary or election official or officials sufficient to change or place in doubt the result."

[3] Maye contends that the failure to list his nickname on the ballot denied him due process. Maye, however, did not raise this issue below, and may not therefore raise it on appeal. *Hammond v. Paul*, 249 Ga. 241 (290 SE2d 54) (1982).

designate that his nickname be used on the ballot,[4] there is no law in Georgia that enables a candidate to do so.[5] Similarly, no provision of the Election Code requires that the superintendent place a candidate's nickname on the ballot.[6] In this regard, OCGA § 21-3-225 merely requires that a superintendent place the "names of all candidates" on the ballot. The word "name"

> "has been defined as the word or combination of words by which a person is distinguished from other individuals" and "consists, in law, of a given or Christian name, and a family surname . . . The Christian or first name . . . has been used from early times to distinguish a particular individual from his fellows . . . Consequently, it has always been considered an essential part of a person's name . . . The prefix 'Mr.' . . . is no part of a person's name but is a mere title." 38 Am. Jur. 594, § 2 et seq.; 65 CJS 2, § 2 et seq.[7]

In addition, the word "nickname" has been defined as "[a] familiar, humorous, or derogatory name added to or replacing the proper name of a person, place, etc."[8] Thus, because "nickname" has a distinct meaning setting it apart from a person's proper name, and because the General Assembly did not use the term in the Election Code, we hesitate to conclude that the General Assembly intended for candidates to have the right to place their nicknames on the ballot. Finally, the issue whether to grant a candidate the right to use a nickname on a ballot is a matter best-suited to the General Assembly. For instance, if it is appropriate to use a nickname at all,[9] is it inappropriate when the nickname implies some military or professional title or rank,[10] or when the nickname is not one by which the candidate is commonly known in the community and may reflect some political slogan or message?[11] We conclude that these matters are

---

[4] E.g., Ariz. Rev. Stat. § 16-311 (G); Colo. Rev. Stat. § 31-10-302; Ill. Rev. Stat. Ch. 10, Par. 5/7-17; Ind. Code Ann. § 3-10-1-14 (c); Ky. Rev. Stat. §§ 118.125 (4) and 118.129 (2); La. Rev. Stat. § 18:463A (1); N.C. Gen. Stat. § 163-138.

[5] See, e.g., OCGA § 21-3-91.

[6] See, e.g., OCGA §§ 21-3-225; 21-3-254.

[7] *Weathers v. Modern Masonry Materials*, 107 Ga. App. 34, 36 (129 SE2d 65) (1962).

[8] The New Shorter Oxford English Dictionary, Vol. 2 at 1918 (1993).

[9] Maryland, for example, specifically prohibits the use of nicknames. Md. Code Ann., Art. 33, § 16-5 (a).

[10] Some states that grant candidates the right to use their nicknames preclude the use of the nickname under such circumstances. E.g., Ariz. Rev. Stat. § 16-311 (G); Ill. Rev. Stat., Ch. 10, Par. 5/7-17.

[11] Several states that grant the right to use a nickname on a ballot specifically require that the nickname be one by which the candidate is commonly known, Ill. Rev. Stat., Ch. 10, Par. 5/7-17; Ind. Code Ann. § 3-10-1-14 (c), and such language has been relied on to contend that candidates do not have the right to use a nickname by which they are not commonly

best left to the discretion of the General Assembly.

Given these considerations, we conclude that the superintendent's failure to place Maye's nickname on the ballot cannot be considered an act of misconduct within the meaning of OCGA § 21-3-422 (1).

Further, even assuming that Maye had a right to have his nickname placed on the ballot and that the failure to do so constituted an act of misconduct by the superintendent, our examination of the record demonstrates that Maye failed to carry his burden to show that the failure to do so changed or placed in doubt the result of the election.[12]

2. Maye also contends that the trial court erred by not ruling that the failure of the superintendent to prepare a sample ballot and have it available for public inspection, as required by OCGA § 21-3-194 (b), was an irregularity that was sufficient to change or place in doubt the result of the election. We disagree. Although the election superintendent conceded that she did not prepare a sample ballot, courts may not declare an election void unless the irregularity casts doubt upon the results of the election.[13] Here, Maye has failed to offer any explanation or proof as to how this irregularity casts doubt upon the election. This contention is therefore without merit.

3. Finally, contrary to Maye's contention, we conclude that the trial court did not err in ruling that the earlier challenge to Pundt's eligibility to hold office barred Maye's present challenge to her eligibility.[14]

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 4, 1996.

*David D. Watkins, Elliott B. Watkins,* for appellant.

*Abbott, Murphy & Harvey, John R. Murphy III, Paine, McElreath & Hyder, Benjamin F. McElreath,* for appellees.

---

known and which conveys a political message, see *Les (Cut the Taxes) Golden v. Cook County Electoral Bd.,* 1996 U. S. Dist. Lexis 3264 (N.D. Ill. 1996).

[12] OCGA § 21-3-422 (1); *Johnson v. Collins,* 260 Ga. 152 (391 SE2d 113) (1990).

[13] OCGA § 21-3-422; *Laite v. Stewart,* 112 Ga. App. 853 (146 SE2d 553) (1965). Maye relies on *State of Ga. v. Carswell,* 78 Ga. App. 84 (50 SE2d 621) (1948), to contend that the failure to prepare the sample ballot mandates that we void the election. *Carswell,* however, was decided before the present Election Code was enacted, and it has been held that the reasoning of *Carswell* is not valid in light of the new Election Code, *Laite,* 112 Ga. App. at 855-857.

[14] *Walker v. Hamilton,* 210 Ga. 155 (78 SE2d 511) (1953).